IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:11-CV-12-D

| | | |
|---|---|---|
| SANDRA EPPERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

On March 25, 2011, Sandra Epperson ("Epperson" or "plaintiff") sued Michael J. Astrue, Commissioner of Social Security ("Commissioner" or "defendant"), alleging that the Commissioner wrongfully denied her applications for Social Security Disability and Supplemental Security Income benefits ("benefits") [D.E. 6]. Epperson asks the court to reverse the Commissioner's denial of her applications and order the payment of benefits, or to remand the case to the Commissioner. Compl. [D.E. 6] 3. On July 28, 2011, Epperson moved for judgment on the pleadings and filed a supporting memorandum [D.E. 31, 32]. On September 26, 2011, the Commissioner moved for judgment on the pleadings and filed a supporting memorandum [D.E. 33, 34]. On October 11, 2011, Epperson responded to the Commissioner's motion [D.E. 36]. As explained below, the court denies Epperson's motion for judgment on the pleadings and grants the Commissioner's motion for judgment on the pleadings.

I.

Epperson applied for benefits on August 21, 2007, and on August 30, 2007. Tr. [D.E. 12–29] 129–54. In her applications, Epperson stated that she became disabled on April 6, 2005,

id. 129, 134, and that fibromyalgia, chronic depression, a bulging disc, bone spurs, and hypothyroidism caused her to be disabled. Id. 77. On November 28, 2007, the Commissioner denied Epperson's applications. Id. 60–69. After the Commissioner denied Epperson's request for reconsideration, see id. 77–80, Epperson requested a hearing before an administrative law judge ("ALJ"). Id. 83–89. On October 1, 2009, an ALJ held such a hearing. Id. 28–55. During the hearing, Epperson testified that she had not worked since approximately 2001, when she was employed as a manager or a manager-in-training of an electronics store and a clothing store. Id. 39–40. Epperson testified that, since that time, mental and physical impairments prevented her from seeking employment. See id. 30–55.

As for her physical impairments, Epperson's representative stated that Epperson was "morbidly obese . . . . [,] ha[d] a problem with fluid overload affecting her legs and requiring the need to elevate them during the day . . . . [,] experience[d] sores in her lower legs . . . [,] experience[d] pain in her feet, right heel, and . . . spine . . . [,] [and] could not do any prolonged sitting or standing due to . . . edema." Id. 31. Epperson testified that swelling in her legs caused her severe pain, and that her physician suggested that she mitigate this pain by elevating her legs above the level of her heart "[o]ff and on most of the day." Id. 41–42. Epperson testified that the swelling made her unable to sit for longer than one hour at a time and unable to stand for longer than forty-five minutes at a time. Id. 36. The record partially supports Epperson's testimony. A physician who evaluated Epperson in connection with her applications, Dr. Kathleen Monderewicz ("Monderewicz"), determined that Epperson suffered from hypothyroidism, lower extremity edema, morbid obesity, various chronic pain conditions, possible degenerative joint disease of the knees, and possible bursitis of the shoulders. Id. 416. Monderewicz recommended that Epperson "avoid prolonged sitting and standing . . . ." Id. However, Monderewicz did not suggest that leg-elevation

2

would reduce Epperson's edema-induced pain. See id. On April 1, 2008, Epperson's treating physician, Dr. Dana Clayton ("Clayton"), did recommend that, to treat her edema, Epperson elevate her legs. Id. 540. On July 29, 2008, Clayton reported that Epperson's edema had abated, and Clayton did not again recommend that Epperson elevate her legs. Id. 530.

As for her mental impairments, Epperson testified that she suffered from severe depression which caused her to be unable to perform routine tasks, to suffer panic attacks, to suffer crying spells, to be unable to form close relationships, to suffer severe anxiety, and to sleep excessively. Id. 33–34, 46–52. Again, the record partially supports Epperson's testimony. A psychiatrist who examined Epperson in 2007 in connection with her applications, Dr. Jerome Albert ("Albert"), determined that Epperson suffered from "major depression . . . and an anxiety disorder with panic attacks." Id. 443. Albert stated that Epperson "may have difficulty sustaining attention to perform routine repetitive tasks . . . [,]" that co-workers "may become frustrated with [Epperson] because of her relatively low intelligence and her physical and mental problems[,]" and that Epperson may not be able to "tolerate the stress associated with day-to-day work activities." Id. 443–44. A psychiatrist who examined Epperson in 2005 in connection with a previous application for benefits, Dr. Richard Bing ("Bing"), noted that although "under stress and pressure [Epperson] [did] have a history of difficulty dealing with other individuals . . . [,]" Epperson did not display "strong contraindications to appropriate interpersonal behavior within the work site . . . ." Id. 234. Nevertheless, Bing concluded that Epperson "may have a difficult time tolerating the stress and pressures associated with day-to-day work activity." Id.

The ALJ performed the prescribed five-step process to evaluate Epperson's applications. See

3

20 C.F.R. § 404.1520; Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam).[1] The ALJ found that Epperson (1) had not engaged in substantial gainful activity since April 6, 2005, Tr. 15, (2) suffered from numerous severe impairments, including obesity, degenerative joint disease of the knee, degenerative disc disease, anxiety, major depressive disorder, and borderline intellectual functioning, id. 15–17, (3) did "not have an impairment or combination of impairments that [met] or medically equal[ed] one of the listed impairments in [the regulations][,]" id. 17–18, (4) had "the residual functional capacity [('RFC')] to perform light work" subject to several limitations, including that Epperson must be allowed to sit and stand, and that Epperson could only perform "simple, low stress work with occasional interaction . . . other[s] . . . [,]" id. 18–19, and (5) that, although Epperson's severe impairments prevented her from performing her past relevant work, "there [were] jobs that exist[ed] in significant numbers in the national economy that [Epperson] [could] perform . . . ." Id. 20–21.

## II.

In a section 405(g) action, the court must uphold the Commissioner's decision so long as substantial evidence in the record supports the decision, and the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); see Richardson v. Perales, 402 U.S. 389, 390, 401 (1971);

---

[1] An ALJ must ask

whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, subpart P; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work.

Johnson, 434 F.3d at 654 n.1; see 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

4

Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (quotations omitted); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), superseded by regulation on other grounds, 20 C.F.R. § 416.927(d)(2). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

According to Epperson, the ALJ made three errors when she determined Epperson's RFC. See Pl.'s Mem. Supp. Mot. [D.E. 32] 12–21. First, Epperson argues that the ALJ erroneously failed to find that Epperson's RFC was limited by Epperson's need to frequently sit with her legs elevated above the level of her heart. Id. 12–14; see Pl.'s Resp. [D.E. 36] 1–2. Epperson argues that the record, including Epperson's testimony and Monderewicz's and Clayton's reports, establishes the existence of such a limitation. See Pl.'s Mem. Supp. Mot. 12–14. According to Epperson, the ALJ did not explain her failure to include a leg-elevation limitation. See Tr. 18–20. In opposition, the Commissioner suggests that the ALJ did not include such a limitation because Monderewicz did not recommend that Epperson elevate her legs, and because Clayton did not persist with the leg-elevation recommendation after finding that Epperson's edema had abated. See Def.'s Mem. Supp. Mot. [D.E. 34] 11–12.

When determining Epperson's RFC, the ALJ was required to "consider the limiting effects of all [of Epperson's] impairments . . . ." 20 C.F.R. § 404.1545(e). When objective medical evidence suggests that a claimant's impairment may cause a limitation, before omitting such a limitation from an RFC determination, the ALJ must explain why a claimant's RFC is not so limited. See SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). If an ALJ does not explain an omission of a possible limitation from an RFC determination, the court may not consider the

5

Commissioner's subsequent explanation for the ALJ's omission. See Patterson v. Bowen, 839 F.2d 221, 225 n.1 (4th Cir. 1988). Here, the ALJ did not expressly include a leg-elevation limitation in her determination of Epperson's RFC, although Epperson testified of her need to frequently sit with her legs elevated, and the record includes some objective medical evidence to support such a limitation's existence. Although the Commissioner offers compelling explanations for the ALJ's omission, to the extent that the ALJ erred, the Commissioner's arguments do not cure the ALJ's error. See id.; see also Hooper v. Astrue, 733 F. Supp. 2d 721, 724 (E.D.N.C. 2010). However, the ALJ did determine that Epperson's RFC was limited by Epperson's need to avoid sitting or standing for long periods of time. See Tr. 18–19. Accordingly, while performing any of the jobs that the ALJ identified at step five, Epperson would be able to sit with some frequency. See id. 21. Epperson does not argue that, while performing any of these jobs, Epperson would not be able to sit with her legs elevated.[2] Accordingly, any error by the ALJ as to Epperson's need to sit with her legs elevated was harmless and does not justify granting Epperson's motion. See Fed R. Civ. P. 61; Toney v. Shalala, 35 F. App'x 557, 1994 WL 463427, at *3 (4th Cir. 1994) (per curiam) (unpublished table decision).

Next, Epperson argues that the ALJ erred by "fail[ing] to include [in the ALJ's determination of Epperson's RFC] . . . Epperson's possible difficulty in tolerating the stress and pressures associated with day-to-day work activity and difficulty sustaining attention to routine, repetitive tasks . . . ." See Pl.'s Mem. Supp. Mot. 14–17. Epperson cites her own testimony and Albert's and Bing's reports, and contends that the record required the ALJ to include such limitations or to

---

[2] To the extent that Epperson argues that the ALJ should have included a limitation that Epperson must sit with her legs elevated for four of every eight hours, see Pl.'s Mem. Supp. Mot. 23, no medical evidence in the record supports such a limitation.

explain her failure to include such limitations. See id. The ALJ did not expressly include such specific limitations in her determination of Epperson's RFC. See Tr. 18–20. However, the ALJ did acknowledge Albert's and Bing's reports, and noted that Epperson's depression-related symptoms improved with medication. Id. 16–17. At step three, the ALJ adequately explained her finding that Epperson had only "moderate difficulties . . . [w]ith regard to concentration, persistence, or pace . . . ." Id. 17. This finding, and the explanation for it, supported the ALJ's omission of the specific depression and anxiety-related limitations that Epperson argues the ALJ should have included. The ALJ did not have to repeat this finding and explanation at step four. See Molloy v. Astrue, No. 08-4801 (JAG), 2010 WL 421090, at *18 (D.N.J. Feb. 1, 2010) (unpublished). Although step four requires findings and explanations that are more specific than those required at step three, see SSR 96-8p, 1996 WL 374184, at *4, the ALJ's step three findings and explanations were sufficiently detailed to satisfy step four's requirements. See Tr. 17–18. Moreover, substantial evidence in the record supports the ALJ's findings as to the limitations caused by Epperson's mental impairments and the ALJ's omission of Epperson's proposed limitations. See id.

Next, Epperson argues that the ALJ's conclusion that Epperson's mental impairments limited Epperson to performing "simple, low stress work" was vague and thus did not satisfy Ruling 85-15. See Pl.'s Mem. Supp. Mot. 15–16. Ruling 85-15 states that "[t]he reaction [of a person having a mental disorder] to the demands of work (stress) is highly individualized . . . . [thus,] [a]ny impairment-related limitations created by an individual's responses to demands of work . . . must be reflected in the RFC assessment." SSR 85-15, 1985 WL 56857, at *6 (1985). Epperson contends that, after finding that Epperson had a mental illness that would likely affect Epperson's reactions to work-related stress, the ALJ should have included in the assessment of Epperson's RFC specific limitations based on individualized findings. Pl.'s Mem. Supp. Mot. 15–17.

7

The court rejects Epperson's argument. In addition to finding that Epperson was limited to "low stress work," the ALJ concluded that Epperson could only do work that required "occasional interaction with . . . other[s] . . . ." Tr. 18. The ALJ based this finding on physicians' opinions about Epperson's likely reactions to work-related stress. See id. 18–20. Accordingly, the ALJ complied with Ruling 85-15. See Hewes v. Astrue, No. 1:10-cv-513-JAW, 2011 WL 4501050, at *8 (D. Me. Sept. 27, 2011) (unpublished), M&R adopted, 2011 WL 4916460 (D. Me. Oct. 17, 2011) (unpublished). Alternatively, Ruling 85-15 applies only when a claimant suffers exclusively from non-exertional limitations. See Roma v. Astrue, 468 F. App'x 16, 20 (2d Cir. 2012) (per curiam) (unpublished). Epperson does not fall into this category. See Tr. 18; see also 20 C.F.R. § 404.1569a(b). Accordingly, the ALJ did not err.

Epperson also argues that, when the ALJ assessed Epperson's RFC, the ALJ failed to make findings about the credibility of Epperson's statements regarding the ways that anxiety and depression limited Epperson's ability to function. See Pl.'s Mem. Supp. Mot. 17–21. At step four, the ALJ found that Epperson's medically determinable impairments were likely to cause the pain or symptoms of which Epperson complained. Tr. 18–19. However, the ALJ partially discredited Epperson's statements regarding the severity of such pain or symptoms. Id. Because the ALJ discredited Epperson's statements, Ruling 96-7p required the ALJ to propound "specific reasons for the finding . . , supported by the evidence in the case record, . . . sufficiently specific to make clear to [Epperson] . . . the weight the [ALJ] gave to [Epperson's] statements and the reasons for that weight." See SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). Contrary to Epperson's suggestion, the ALJ complied with Ruling 96-7p. The ALJ found that Epperson's "mental impairments . . . imposed additional limitations of functioning." Tr. 20. To the extent that the ALJ did discredit Epperson's testimony regarding limitations caused by anxiety and depression, the ALJ

adequately explained her reasons for doing so. For example, the ALJ found that Epperson's ability to "function as an Avon representative and recruiter during the time period that she alleges that she was disabled[]" suggested that Epperson's mental impairments did not restrict her ability to "perform her activities of daily living . . . ." Id. 17; see SSR 96-7p, 1996 WL 374186, at *3 (when assessing a claimant's credibility, the ALJ should consider "[t]he individual's daily activities"). Additionally, the ALJ noted that Epperson's symptoms appeared to abate with medical treatment. Tr. 17; see SSR 96-7p, 1996 WL 374186, at *7–8 (when assessing a claimant's credibility, the ALJ should consider "[t]he . . . effectiveness . . . of any medication the individual takes . . .").[3] Although the ALJ did not articulate specific findings as to each of the Ruling 96-7p factors, the ALJ was not required to do so. See Baggett v. Astrue, No. 5:08-CV-165-D, 2009 WL 1438209, at *9 (E.D.N.C. May 20, 2009) (unpublished). Instead, the ALJ was only required to consider each factor. Id. "The decision shows that the ALJ did consider these factors." Id.

Finally, Epperson argues that the ALJ erred at step five. Pl.'s Mem. Supp. Mot. 22. At step five, the Commissioner had the burden of showing that there was work in the national economy that Epperson could perform. "The testimony of a [VE] is usually required in order for the [Commissioner] to meet this burden." McClain v. Schweiker, 715 F.2d 866, 869 (4th Cir. 1983). "In questioning a [VE] . . . the ALJ must propound hypothetical questions to the [VE] that are based upon a consideration of all relevant evidence of record on the claimant's impairment." Thompson v. Astrue, 442 F. App'x 804, 806 n.1 (4th Cir. 2011) (per curiam) (unpublished). An ALJ errs when he or she makes findings at step five based on a VE's answer to a hypothetical question that

---

[3] Admittedly, the ALJ made these findings at step three, rather than at step four. To the extent that the ALJ did not repeat the findings at step four, the ALJ nonetheless provided Epperson with sufficient explanation for the ALJ's step four credibility assessment. See SSR 96-7p, 1996 WL 374186, at *2.

9

did not reflect each limitation caused by a claimant's impairments. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Here, the ALJ asked the VE a hypothetical question that included each of the limitations that the ALJ found when assessing Epperson's RFC. See Tr. 53. Epperson argues that the ALJ should have included in the hypothetical question additional limitations that, according to Epperson, the ALJ erroneously failed to find at step four. See Pl.'s Mem. Supp. Mot. 22–24. However, substantial evidence supports the ALJ's determination of Epperson's RFC and the ALJ complied with the law in determining Epperson's RFC. Accordingly, the ALJ's hypothetical question to the VE was adequate and the ALJ did not err by relying on the VE's answer to the hypothetical question. See, e.g., West v. Astrue, No. 8:10-1442-DCN-JDA, 2011 WL 4527355, at *14 (D.S.C. Jun. 6, 2011) (unpublished), M&R adopted, 2011 WL 4482494 (D.S.C. Sept. 27, 2011) (unpublished).

III.

The ALJ properly applied the law and substantial evidence supports the ALJ's conclusions. Accordingly, the court DENIES Epperson's motion for judgment on the pleadings [D.E. 31] and GRANTS the Commissioner's motion for judgment on the pleadings [D.E. 33]. The clerk shall close the case.

SO ORDERED. This 5 day of September 2012.

JAMES C. DEVER III
Chief United States District Judge